959 A.2d 1213 (2008)
403 N.J. Super. 586
James WILLIAMSON, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
No. A-3465-07T2
Superior Court of New Jersey, Appellate Division.
Submitted October 22, 2008.
Decided November 14, 2008.
James Williamson, appellant, pro se.
Anne Milgram, Attorney General, for respondent (Lewis Scheindlin, Assistant Attorney General, of counsel; John P. Cardwell, Deputy Attorney General, on the brief).
Before Judges STERN, RODRÍGUEZ and PAYNE.
The opinion of the court was delivered by
RODRÍGUEZ, A.A., P.J.A.D.
James Williamson, an inmate serving a three-year term at Bayside State Prison, appeals from a final agency decision by the Department of Corrections (DOC), imposing disciplinary sanctions based on a finding that he committed prohibited act *.101, escape, N.J.A.C. 10A:4-4.1(a). We reverse the finding of guilt.
On February 6, 2008, Williamson was housed at Hope Hall, a halfway house in Camden. That day, he went to a job interview as a condition of his incarceration. Williamson was required to return to Hope Hall by 2:00 p.m. At 10:02 a.m., Williamson called Hope Hall and informed a staff member the bus had dropped him off at the wrong job site for the interview.
Later, Williamson again contacted Hope Hall to request an extension of the time for his return, which was denied. He says the counselor he spoke with told him to complete the job application and interview and to bring receipts from the bus to establish when he got on the bus. Williamson *1214 says the counselor told him if he did this "he would be covered." Williamson continued on the job interview. He phoned Hope Hall at 1:52 p.m. to again request an extension and inform them he was "on his way back."
Shortly after 2:00 p.m., the local police, hospitals and the job site were contacted in order to find Williamson. At 2:50 p.m., a Hope Hall employee determined that Williamson had filled out an application at the job site, but that he "had left an hour ago." At 2:52 p.m., an escape report was filed by Hope Hall. At 3:45 p.m., Williamson returned to Hope Hall.
Williamson was charged with violation *.101. At the hearing, Williamson entered a not guilty plea and requested the assistance of a counsel substitute. This request was granted. The Hearing Officer reviewed the Disciplinary and Escape Reports, the Resident Log and other logs, which indicated that officers contacted the police, hospitals and the prospective employer trying to locate Williamson. The reports also showed that Williamson was denied his request to delay his return to Hope Hall. The hearing officer found that the "state reports they went to the inmate's job interview worksite to check on him, he was not there. They did not know where he was." The Hearing Officer found no reason to discredit the State's report and upheld the charge against Williamson. The Hearing Officer recommended a sanction of referral to the classification committee for status review.[1]
Williamson appealed the decision administratively. The Associate Administrator upheld the guilty finding and the imposition of sanctions.
Williamson appeals to us, contending:
THE [DOC] ABUSED ITS DISCRETION BY IMPROPERLY FINDING DEFENDANT GUILTY OF HIS INSTITUTIONAL DISCIPLINARY CHARGE.
We agree.
"Escape" is defined by the New Jersey Administrative Code as follows:
(a) An inmate residing at a residential community program shall be deemed an escapee under the following conditions:
. . .
2. The inmate fails to arrive at the temporary leave site or fails to return to the Residential Community Release Program [RCRP] unless the designated time has been extended for a legitimate reason by the Director or designee. The RCRP shall assume the responsibility for determining the legitimacy of the reason for granting an extension.
(b) The inmate who cannot be contacted at the destination to which the inmate has been granted temporary leave shall be deemed an escapee ...
(c) If the inmate cannot be contacted at the temporary leave site, but does contact the RCRP, the designated time of return may be adjusted by the Director of the RCRP or designee, allowing sufficient time for the inmate to return to the RCRP.
[N.J.A.C. 10A:20-4.37.]
This regulation, although setting forth straightforward guidelines as to what sort of behavior and actions constitute an "escape," also builds into the framework a degree of discretion to accommodate unforeseen or unexpected circumstances. Section (a)(2) allows a Director or designee to extend the time allotted for an inmate's return "for a legitimate reason." Section *1215 (c) allows a time deadline to be adjusted where, though the inmate cannot be reached by the facility, the inmate nevertheless checks in and requires additional time to return. Although ultimate discretionary decision lies in the hands of the administrator, the regulation is structured so as to avoid rigid application. The conditions built into the regulation are tailored as checks on the Director's capricious use of this discretion.
Here, Williamson contacted Hope Hall to inform the staff that the bus driver had let him off at the wrong stop. He requested an extension on the time allotted for his return. A counselor denied Williamson's request for an extension, but informed him that he should continue with the job application and interview and bring his bus receipts to establish the time he caught the busses. The counselor informed Williamson that, if he did this, "he would be covered." Williamson contacted Hope Hall several more times and again requested extensions, which were denied. He called Hope Hall at 1:52 p.m. to inform them he was on his way back to the facility.
Although Williamson returned to Hope Hall approximately one hour and forty-five minutes late, technically qualifying him as an "escapee,"[2] the circumstances suggest he never intended, even temporarily, to commit an escape or otherwise violate the rules of his residential community program. He called numerous times to check in and request extensions, as he was required to do. A counselor suggested that if Williamson continued with the interview and obtained bus receipts to verify his story, his lateness would be excused. Williamson did complete the interview and, after calling Hope Hall to inform the staff he was catching a bus back, returned. At all times, he recognized the control and authority of Hope Hall and acted in compliance with that authority.
The DOC failed to take into account Williamson's uncontested version of events, investigate his claims, or to note Williamson's ongoing efforts to maintain contact with Hope Hall and comply with its rules. We, therefore, conclude that the DOC determination, which did not give attention to the circumstances surrounding these events, was arbitrary and capricious. In re Taylor, 158 N.J. 644, 657, 731 A.2d 35 (1999).
Given this decision, we do not address the merits of Williamson's other two contentions.
The finding of escape is reversed.
NOTES
[1] Williamson has now been released from custody. We consider his appeal to preserve any future benefits that can be derived from a reversal of his disciplinary record. Respondent DOC does not challenge Williamson's standing to appeal.
[2] Williamson was written up for being more than two hours late, although, in fact, he was not.